IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL SHANNON TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-cv-046-WKW |
| | ) | |
| JEFFERSON S. DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Michael Shannon Taylor is an Alabama death-row inmate in the custody of the Alabama Department of Corrections ("ADOC").[1]  In January 2017, Taylor filed a complaint under 42 U.S.C. § 1983, asserting three causes of action against Defendants for violations of his constitutional rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution.  (Doc. # 1.)

This matter is before the court on Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), for Taylor's failure to state a claim upon which relief can be granted.  (Doc. # 14.)  This motion has been fully briefed and is ripe for review. Defendants' motion is due to be granted in part and denied in part.

---

[1]  Presently, Taylor has no execution date.

**A.    Taylor's Capital Litigation History**

On April 14, 1993, Taylor was convicted of three counts of capital murder for the November 1991 killings of 83-year-old Ivan Moore and his 79-year-old wife, Lucille Moore, by repeatedly striking them with a metal bar, fracturing their skulls. *Taylor v. State*, 10 So. 3d 1079, 1080 (Ala. Crim. App. 2006).  Two of the counts were made capital because they were committed during the course of a robbery, *see* Ala. Code § 13A-5-40(a)(2) (1975), and the third count was made capital because two or more persons were murdered during one act or course of conduct, *see* Ala. Code § 13A-5-40(a)(10) (1975).  The jury found Taylor guilty on all counts of capital murder and unanimously recommended the death sentence.  On May 5, 1993, the trial judge accepted the jury's recommendation and sentenced Taylor to death. *Taylor*, 10 So. 3d at 1080.

Taylor's convictions were affirmed on appeal, *see Taylor v. State*, 666 So. 2d 36 (Ala. Crim. App. 1994), as was his sentence, *see Taylor v. State*, 666 So. 2d 71 (Ala. Crim. App. 1994).  The Alabama Supreme Court affirmed his convictions and sentence.  *Ex parte Taylor*, 666 So. 2d 73 (Ala. 1995), *cert. denied*, *Taylor v. Alabama*, 516 U. S. 1120 (1996).

On March 3, 1997, Taylor filed a Rule 32 petition in state court, challenging his convictions and sentence.  The circuit court dismissed some claims as procedurally barred, conducted an evidentiary hearing on the remaining claims, and

ultimately denied the Rule 32 petition. The Alabama Court of Criminal Appeals (ACCA) affirmed. *Taylor v. State*, 10 So. 3d 1037, 1047 (Ala. Crim. App. 2004). The Alabama Supreme Court granted certiorari only on the issue of whether a determination on direct appeal that there was no plain error in the trial proceeding precludes a capital defendant from raising a claim of ineffective assistance of counsel in a post-conviction proceeding. The Alabama Supreme Court held that a determination on direct appeal that no plain error at trial occurred "does not automatically foreclose a determination of the existence of the prejudice required under *Strickland* to sustain a claim of ineffective assistance of counsel." *Ex parte Taylor*, 10 So. 3d 1075, 1078 (Ala. 2005). For that reason, the Alabama Supreme Court reversed the ACCA's conclusion and remanded for further proceedings. The remainder of the ACCA's decision was affirmed. *Id.*

On remand, the trial court denied Taylor's claim that he had received ineffective assistance of trial counsel. On February 22, 2008, the ACCA affirmed, without an opinion, *see Taylor v. State*, 10 So. 3d 1079, 1083, n.*. On December 31, 2008, the Alabama Supreme Court denied *certiorari* review, without opinion. *Id.*

On February 9, 2009, Taylor filed a habeas corpus petition, pursuant to 28 U.S.C. § 2254, in the U. S. District Court for the Northern District of Alabama, which was denied. *Taylor v. Culliver*, No. 4:09-cv-00251-KOB, 2012 WL 4479151,

at *1 (N.D. Ala. Sept. 26, 2012).  The Eleventh Circuit affirmed.  *Taylor v. Culliver*, 638 F. App'x 809 (11th Cir. 2015).  On November 28, 2016, the Supreme Court denied Taylor's petition for a writ of certiorari.  *Taylor v. Culliver*, 137 S. Ct. 494 (2016).

**B.**     **History of Alabama's Method of Execution and Execution Protocol**

      *1.*     *Switch from electrocution to lethal injection*

Taylor has been on death row since 1993.  At the time Taylor was sentenced, Alabama executed inmates by electrocution.  On July 31, 2002, Alabama adopted lethal injection as its preferred method of execution and gave inmates then on death row thirty days thereafter in which to select electrocution as their method of execution.  The failure to timely elect electrocution constituted a waiver to death by electrocution.  Taylor did not opt out of the new protocol; thus, he became subject to death by lethal injection.  *See* Ala. Code § 15-18-82.1 (2002).

From July 31, 2002, when Alabama switched to lethal injection as its preferred form of execution, until 2011, sodium thiopental was the first drug used in the ADOC's three-drug lethal injection protocol.  In 2011, the ADOC amended its protocol by substituting pentobarbital for sodium thiopental as the first drug.  At that time, the ADOC made no amendment to the other two drugs administered, pancuronium bromide and potassium chloride.

On September 10, 2014, the ADOC amended its execution protocol again, this time by substituting midazolam for pentobarbital as the first drug used in its three-drug lethal-injection sequence, and by substituting rocuronium bromide for pancuronium bromide as the second drug. On September 11, 2014, the State disclosed the ADOC's amended protocol in motions it filed in the Alabama Supreme Court to set execution dates for several death-row inmates.

### 2. *Adoption of the consciousness assessment*

In October 2007, the ADOC made the consciousness assessment a mandatory component of its execution protocol. *See Arthur v. Thomas*, 674 F. 3d 1257, 1263 n.6 (11th Cir. 2012) (". . . Alabama assesses an inmate's consciousness through graded stimuli, first calling the inmate's name, then stroking the inmate's eyelids and finally pinching the inmate's arm."); *Arthur v. Allen*, CV-0722-WS-M, 2007 WL 4105113, at *2 (S.D. Ala. Nov. 15, 2007) ("The modifications to the protocol consist of the following additions to the preexisting procedures: (1) examination of the prisoner by an execution team member, following administration of the [first drug] but before administration of the [second drug], to assess his consciousness (by calling his name, gently stroking his eyelashes, and pinching his arm).").

## C. <u>Taylor's Claims</u>

Taylor's first cause of action is an Eighth Amendment claim challenging the ADOC's execution protocol, alleging that the ADOC's use of midazolam, the first drug to be administered, is unconstitutional. Specifically, he asserts that midazolam does not produce the sustained state of anesthesia necessary to render him insensate to the unconstitutional level of pain associated with the injection of the second and third drugs. On this premise, he claims that Defendants' current execution protocol creates a "substantial risk of serious harm," *Baze v. Rees*, 553 U. S. 35, 50 (2008) (plurality opinion), and violates his right to be free from cruel and unusual punishment under the Eighth Amendment to the U. S. Constitution. Instead of midazolam used in a three-drug, lethal injection protocol, Taylor proposes four alternative methods of execution, three of which are one-drug protocols using either pentobarbital/compounded pentobarbital, sodium thiopental, or midazolam; the fourth alternative is an execution by nitrogen asphyxiation.

In his second cause of action, Taylor challenges that part of the ADOC's execution protocol known as the consciousness assessment. He claims that this assessment is inadequate to ensure that he is sufficiently anesthetized prior to being injected with the remaining two drugs, which creates a substantial risk of unconstitutional pain, in violation of the Eighth Amendment.

Taylor's third cause of action is a claim that the ADOC's policy prohibiting an inmate's counsel witnessing his execution from having access to a cellular phone or a land-line telephone during his execution denies him access to the court in violation of his First, Eighth, and Fourteenth Amendment rights.

## II. STANDARD OF REVIEW

Defendants move to dismiss Taylor's complaint *in toto*, pursuant to Federal Rule of Civil Procedure 12(b)(6), for two independent reasons: (1) his complaint is subject to dismissal at this juncture, without an evidentiary hearing, because it is clear from the face of the complaint that all three claims are time-barred; and (2) all three claims fail to state a claim upon which relief can be granted.

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U. S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 663 (alteration in original) (citation omitted).

The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U. S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U. S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

## III. DISCUSSION

### A.  Statute of Limitations

It is well settled that, when the complaint shows on its face that the limitations period has expired, a statute-of-limitations defense may be raised on a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). *See AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982) (party may seek dismissal based on statute-of-limitations defense pursuant to Rule 12(b)(6)); *Mann v. Adams Realty Co.*, 556 F.2d 288 (5th Cir. 1977); *Mooney v. Tallant*, 397 F. Supp. 680 (N.D. Ga. 1975).

"All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought," *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).

In Alabama, the statute of limitations applicable to personal injury actions is two years. *Id.*

### 1.    *Eighth Amendment Midazolam Claim*

Taylor's complaint is virtually identical to the complaints filed in 2016 by Charles Lee Burton, Geoffrey Todd West, Torrey Twane McNabb, and Jeffery Lynn Borden, all of whom raised the same three claims Taylor asserts in his complaint.[2] The cases filed by Burton, West, McNabb, and Borden are four cases in a larger group of consolidated cases the court has collectively styled, "the Midazolam Litigation." *See Grayson, et al. v. Dunn*, No. 2:12-cv-0316-WKW (M.D. Ala. 2012). All plaintiffs in the Midazolam Litigation are death-row inmates who are challenging the ADOC's use of midazolam in the lethal-injection execution protocol as violating the Eighth Amendment. Not all plaintiffs in the Midazolam Litigation have raised the same claims; however, except for Taylor's proposed fourth alternative method of execution, his complaint presents the same claims presented in the Burton/West/McNabb/Borden complaints.

In considering Defendants' motion to dismiss filed in the Burton, West, McNabb, and Borden cases pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a

---

[2]  The only difference between Taylor's complaint and the Burton/West/McNabb/Borden complaints is that Taylor proposed a fourth alternative method of execution by nitrogen asphyxiation, while the other complaints proposed only the three alternatives with a one-drug protocol using either pentobarbital/compounded pentobarbital, sodium thiopental, or midazolam. This difference is inconsequential to the underlying claims.

claim upon which relief can be granted, this court perceived the Eighth Amendment midazolam claim as a "general challenge" to the ADOC's three-drug injection protocol and concluded that it was time-barred and subject to dismissal under Fed. R. Civ. P. 12(b)(6). *See id.* (Docs. # 249, 250). The court further concluded that these plaintiffs' other two claims also were time-barred and dismissed their complaints in total. Burton, West, McNabb, and Borden appealed the dismissal of their complaints.

On appeal, the Eleventh Circuit disagreed that their Eighth Amendment method-of-execution claim presented a time-barred, general challenge to the three-drug protocol. The Eleventh Circuit held that appellants' allegations made in support of their Eighth Amendment claims regarding midazolam "if proven true . . . would satisfy *Baze*'s two-prong standard." *West v. Warden,* 869 F.3d 1289, 1298 (11th Cir. 2017).[3] Thus, the Eleventh Circuit concluded, "the Complaint states a claim sufficient to survive a Rule 12(b)(6) motion to dismiss." *Id.*

---

[3] Although Burton, West, McNabb, and Borden appealed the dismissal of all three claims, the Eleventh Circuit considered only the Eighth Amendment midazolam claim, noting: "In this decision, we address only the District Court's dismissal of Appellants' Eighth Amendment midazolam claim. On remand, the District Court should consider Appellants' additional claims in a manner not inconsistent with this opinion." *West*, 869 F.3d at 1293 n.8.

The Eleventh Circuit held that the Burton, West, McNabb, and Borden complaints (1) do not present a time-barred general challenge to the three-drug protocol and (2) contain Eighth Amendment method-of-execution claims "sufficient to survive a Rule 12(b)(6) motion to dismiss." *Id.* Taylor's complaint presents the same Eighth Amendment method-of-execution claim challenging midazolam raised in the Burton/West/McNabb/Borden complaints. Accordingly, Defendants' motion to dismiss Taylor's Eighth Amendment method-of-execution claim *vis-à-vis* the ADOC's use of midazolam, pursuant to Rule 12(b)(6), is due to be denied with respect to Taylor's proposed alternative methods of execution employing either compounded pentobarbital, sodium thiopental, or midazolam.

Taylor also proposed a fourth alternative method of execution with pure nitrogen gas, which he claims would be a quick, painless death. (Doc. # 1 at 21.) Procedurally, Taylor suggests this execution method could be accomplished by first administering an anxiolytic, such as midazolam, and then delivering pure nitrogen gas using a mask, "rendering the inmate unconscious within seconds and painlessly dead within minutes." (*Id.* at ¶ 74.)

Defendants counter that this "alternative" fails as a matter of law, time-barred or not, and is no true alternative for several reasons. First, nitrogen asphyxiation is not a known and available alternative that is feasible and can be readily implemented because currently it is not permitted under Alabama law. Defendants point out that

11

Ala. Code § 15-18-82(a) (1975) provides for one method of execution: lethal injection, with the exception that, under certain conditions not applicable here, an inmate may elect to be executed by electrocution.  Ala. Code § 15-18-82.1(a)–(b) (1975).  Thus, pursuant to current Alabama law, an execution by either lethal injection or electrocution are the only two possible lawful methods of execution in Alabama.  Defendants note that, if these two execution methods are held to be unconstitutional by the Alabama Supreme Court or the U. S. Supreme Court, then a death sentence may be carried out by "any constitutional method of execution." *Id*. § 15-18-82.1(c).

In short, Defendants argue that, since nitrogen asphyxiation is not an execution method authorized in the Code of Alabama, this method of execution would be unlawful unless (1) lethal injection and electrocution were declared unconstitutional, and (2) the statute was amended to authorize execution by nitrogen asphyxiation.  Therefore, Defendants submit that this method is neither feasible nor readily implemented.  Defendants are correct. The Eleventh Circuit has spoken on this issue.  It has rejected Eighth Amendment method-of-execution claims by Alabama death-row inmates proposing a firing squad as an alternative to Alabama's current method of execution. *See Boyd v. Warden, Holman Corr. Facility*, 856 F.3d 853, 867 (11th Cir. 2017) (holding that prior precedent compelled it to hold that "Boyd ha[d] failed to carry his burden of pleading facts sufficient to plausibly

suggest that execution by firing squad or hanging is feasible or readily implementable in Alabama." (citing *Arthur v. Comm'r, Alabama Dep't of Corr.*, 840 F.3d 1268 (11th Cir. 2016), *cert. denied sub nom. Arthur v. Dunn*, 137 S. Ct. 725 (2017), *reh'g denied*, 137 S. Ct. 1838 (2017)).  Likewise, Taylor cannot plausibly plead nitrogen asphyxiation as an alternative method of execution.

Defendants' Rule 12(b)(6) motion to dismiss Taylor's Eighth Amendment method-of-execution claim  is due to be granted with respect to Taylor's proposed fourth alternative method of execution employing nitrogen asphyxiation.

### 2. *Eighth Amendment Consciousness Assessment Claim*

Taylor also challenges as unconstitutional that portion of the ADOC's execution protocol known as the "consciousness assessment." Specifically, he claims that during an execution, the ADOC employs a procedure that is performed by a correctional officer who has no medical training (Doc. # 1, ¶¶ 77–78), and that this procedure is an inadequate procedure to assess anesthetic depth, all in violation of the Eighth Amendment. (Doc. # 1, ¶ 85.)  Taylor points out "[a]nesthesiologists receive extensive training in order to assess and monitor a patient's depth of anesthesia.  Not only must they graduate from college and medical school, they must follow this with four years of training before they can be certified to practice anesthesiology without supervision."   (Doc. # 1, ¶ 79.)   He also states that anesthesiologists rely on medical "devices that monitor vital signs" in assessing

anesthetic depth. (*Id.*, ¶ 80.)  Taylor requests that Defendants be enjoined from executing him with a constitutionally deficient consciousness assessment.

The consciousness assessment has been a mandatory component of the ADOC's execution protocol since 2007.  For purposes of this discussion, it can be assumed that this addition to the ADOC's protocol is a "significant change in the state's execution protocol." *McNair*, 515 F.3d at 1177; *but see Arthur v. Ala. Dep't of Corrs.*, 285 F. App'x 707, 705 (11th Cir. 2008) ("[I]t does not appear that Alabama's 26 October 2007 minimal changes to its execution protocol materially changed the procedures that were adopted in 2002.").  The statute of limitations for a constitutional challenge to the ADOC's consciousness assessment is two years. *See* Ala. Code § 6-2-38 (1975); *McNair*, 515 F. 3d at 1173.  Thus, to be timely, Taylor had to file any Eighth Amendment claim challenging the consciousness assessment by October of 2009, but he did not file this lawsuit until January 24, 2017.

Taylor argues that this claim is timely because it is based on facts, which were not known about the consciousness assessment until it was performed during the Christopher Brooks and Ronald Bert Smith, Jr., executions in January 2016 and December 2016, respectively.

Taylor's allegations concerning the Brooks and Smith executions do not change the fact that his claim consists of a general complaint concerning the

adequacy of the consciousness assessment.  There is no allegation that the Brooks and Smith executions involved any change, much less a significant change, in the ADOC's execution protocol concerning the consciousness assessment or that its performance is related to midazolam becoming a part of the lethal-injection protocol in 2014.  Similar to another general challenge to the ADOC's consciousness assessment that was dismissed as being time-barred, "[n]othing prevented [Taylor] from challenging the training and qualifications of ADOC's execution personnel" concerning the consciousness assessment "within Alabama's two-year statute of limitations, well before midazolam was introduced into the protocol." *Boyd v. Myers*, 2:14-cv-1017-WKW, 2015 WL 5852948, at *5 (M.D. Ala. Oct. 7, 2015). Like the claim in *Boyd*, Taylor's claim has "[nothing] to do with the State's switch from pentobarbital to midazolam, and [Taylor does] not allege anything specific about midazolam in [this] claim []." *Id.*

Consequently, on the face of Taylor's complaint, his challenge to the constitutionality of the consciousness assessment is untimely and due to be dismissed as time-barred.

### 3.    *First, Eighth, and Fourteenth Amendment Access-to-Court Claim*

Taylor further claims that the ADOC's policy prohibiting an inmate's counsel who is witnessing his execution from having access to a cellular or a landline phone during the execution violates his right of access to the court under the First, Eighth,

and Fourteenth Amendments. (Doc. # 1, ¶¶ 87–94.) Taylor contends that enforcement of this ADOC policy will prevent his counsel from contacting the court and seeking intervention if something arises during his execution that warrants a stay or other relief. (Doc. # 1, ¶ 89.) Taylor asserts that the ADOC's policy prohibiting visitors from possessing cellular phones or devices within a facility should not apply to an inmate's counsel visiting the institution as a designated witness to an execution and that such policy improperly interferes with the attorney/client relationship.

As relief, Taylor seeks to invalidate the ADOC's policy prohibiting the possession of cellular telephones, as applied to designated attorney witnesses, to protect his right of meaningful access to the court and to be free from cruel and unusual punishment. Alternatively, Taylor requests an order directing Defendants to provide a land-line telephone in the viewing room set aside for his witnesses, to which an attorney witness may have unfettered access during the execution. (Doc. # 1 at 28.)

It is undisputed that the ADOC's long-standing policy prohibits visitors to a correctional facility from possessing cellular telephones or wireless devices within the correctional facility. This policy applies to all visitors, even those who also happen to be counsel for a death-row inmate and are at the facility as designated witnesses to an execution. There is no exception for attorneys in this instance; a

visitor is a visitor. The ADOC has not recently changed this policy; it has been in effect for many years.

To reiterate, "[a]ll constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought," *McNair,* 515 F.3d at 1173, and the statute of limitations in Alabama is two years. *Id.* It is well settled that, "absent a significant change in the state's execution protocol," Taylor was required to file this claim within two years "of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed protocol." *Id.* at 1177.

Taylor argues that this claim is timely because the factual basis originates from the executions of Christopher Brooks in January 2016 and Ronald Bert Smith, Jr., in December 2106, where Defendants denied their counsel's request for permission to possess a cell phone during the execution or to have access to a landline telephone at that time. Taylor's argument is unpersuasive.

The events surrounding the Brooks and Smith executions did not give rise to this claim; neither do they render this claim timely. Taylor does not allege that the ADOC has ever allowed visitors to its facilities to have cell phone access or other phone access during an execution or prior to the adoption of the ADOC's current protocol in September 2014. This claim is simply another belatedly raised claim

that Taylor could have raised years ago. Therefore, this claim is time-barred on the face of the complaint and due to be dismissed, similar to the First Amendment claim in *Roberts v. Myers*, 2:14-CV-1028-WKW, 2015 WL 1198666, at *2-3 (M.D. Ala. Mar. 16, 2015) (Doc. # 21).

## B.    <u>Failure to State a Claim for Relief Under Fed. R. Civ. P. 12(b)(6)</u>

In addition to asserting that the complaint is time-barred, Defendants also submit that it should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 1.    *Eighth Amendment Midazolam Claim*

The Eleventh Circuit has ruled that the Eighth Amendment method-of-execution claim raised in the Burton/West/McNabb/Borden complaints, a claim identical to Taylor's, contained allegations regarding midazolam that, "if proven true . . . would satisfy *Baze*'s two-prong standard," *West v. Warden,* 869 F.3d at 1298, and that "the Complaint states a claim sufficient to survive a Rule 12(b)(6) motion to dismiss," *Id*. Thus, Taylor's identical Eighth Amendment method-of-execution claim plausibly states a claim and is not subject to dismissal on Defendants' Rule 12(b)(6) motion.

### 2.    *Eighth Amendment Consciousness Assessment Claim*

In *Arthur v. Thomas*, No. 2:11-cv-438-WKW (M. D. Ala. 2011), plaintiff Thomas Arthur also challenged the ADOC's consciousness assessment as being

constitutionally deficient for the same reasons as Taylor. In *Arthur*, this court addressed that claim as follows:

> Arthur's Equal Protection challenge to the general adequacy of the ADOC's consciousness assessment, claiming that it should meet certain training and medical standards but does not, also fails. The Eighth Amendment does not require that such medical training and standards or procedures be employed in a consciousness assessment during an execution, nor is there a constitutional requirement that a state's execution protocol include a consciousness assessment at all. *See Baze*, 553 U. S. at 58-61. The consciousness assessment is simply an additional safeguard that is not required by the Constitution. In *Baze*, the Court rejected the condemned inmates' arguments that Kentucky's execution protocol for checking consciousness, which was much less substantial than the ADOC's, could not pass Eighth Amendment scrutiny and that more sophisticated procedures involving medical procedures, medical equipment, and/or medical personnel, such as anesthesiologists, were required by the Eighth Amendment. The *Baze* Court held that such "sophisticated procedures" are not required to monitor anesthetic depth and that the administration of a consciousness assessment much simpler than the one implemented by the ADOC is not required by the Eighth Amendment. *Baze*, 553 U. S. at 59-60. (footnote omitted).

> *Glossip* reinforced this tenet, holding, "We recognized this point in *Baze*, where we concluded that although the medical standard of care might require the use of a blood pressure cuff and an electrocardiogram during surgeries, this does not mean those procedures are required for an execution to pass Eighth Amendment scrutiny." 135 S. Ct. at 2742. Arthur's attempt to apply a medical standard of care to execution procedures and training for them, in this case, procedures that are not required by the Eighth Amendment, does not state a plausible equal protection claim. This principle is applicable to Arthur's Equal Protection claim challenging the "adequacy" of the consciousness assessment and the training therefor, including the force used in the pinch test.

*Arthur v. Dunn*, No. 2:11-CV-438-WKW, 2016 WL 1551475 *1, *22-23 (M.D. Ala. Apr. 15, 2016), appeal dismissed (July 12, 2016), *aff'd sub nom. Arthur v. Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268 (11th Cir. 2016), *cert. denied sub nom. Arthur v. Dunn*, 137 S. Ct. 725 (2017), *reh'g denied*, 137 S. Ct. 1838 (2017).

Likewise, Taylor's claim challenging the adequacy of the ADOC's consciousness assessment, similar to Arthur's, fails to state a claim upon which relief can be granted.

### 3.   *First, Eighth, and Fourteenth Amendment Access-to-Court Claim*

This court also has considered and rejected an access-to-court claim similar to Taylor's.  *See Arthur v. Dunn*, No. 2:16-CV-866-WKW, 2017 WL 1362861, at *1 (M.D. Ala. Apr. 12, 2017), *aff'd sub nom. Arthur v. Comm'r, Alabama Dep't of Corr.*, 680 F. App'x 894 (11th Cir. 2017), *cert. denied sub nom. Arthur v. Dunn*, 137 S. Ct. 1521 (2017).  This claim in *Arthur* was dismissed on Defendants' Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Taylor's cookie-cutter claim to Arthur's fares no better; it, too, is insufficient to survive a Rule 12(b)(6) motion.

### IV.  CONCLUSION

For the reasons stated, it is ORDERED that Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. # 14) is GRANTED IN PART and DENIED IN PART, as follows:

1.      Defendants' Motion to Dismiss is DENIED with respect to Taylor's Eighth Amendment method-of-execution claim in Count 1 in that (a) Taylor has plausibly pleaded that the ADOC's execution protocol entails a substantial risk of severe pain, and (b) Taylor has plausibly pleaded three alternative methods of execution with either compounded pentobarbital, sodium thiopental, or midazolam in a single-drug execution.  Defendants' Motion to Dismiss is GRANTED with respect to Taylor's fourth proposed alternative method of execution by nitrogen asphyxiation.

2.      Defendants' Motion to Dismiss is GRANTED with respect to Taylor's Eighth Amendment consciousness assessment claim (Count 2).

3.      Defendants' Motion to Dismiss is GRANTED with respect to Taylor's First Amendment "right of access" claim for cell phone access (Count 3).

DONE this 21st day of November, 2017.

_____
/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE